Medical Diagnostic Ctr. v Ameriprise Ins. Co. (2026 NY Slip Op 50235(U))

[*1]

Medical Diagnostic Ctr. v Ameriprise Ins. Co.

2026 NY Slip Op 50235(U)

Decided on February 25, 2026

Civil Court Of The City Of New York, Kings County

Roper, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 25, 2026
Civil Court of the City of New York, Kings County

Medical Diagnostic Center a/a/o 
 Laroche Parnel, Richard Djevra, Plaintiff,

againstAmeriprise Ins. Co., Defendant.

Index No. CV-736699/2021

Zara Javakov, Esq., P.C., Brooklyn, for Plaintiff.Callinan & Smith LLP, Wantagh, for Defendant.

Sandra E. Roper, J.

Recitation, as required by CPLR §2219(a) of the papers considered in review of this Motion:
PapersNotice of Motion For Summary Judgment 1Opposition/Cross-Motion 2ReplyExhibitsOtherAfter Oral arguments held on February 4 and 6, 2026, the Decision and Order on Defendant's Motion for Summary Judgment pursuant to CPLR 3212 premised upon lack of No-Fault Coverage pursuant to NY Insurance Law Article 51, 11 NYCRR 65, for the reasons set forth below is hereby DENIED.
Defendant's Motion for Summary Judgment is premised upon two distinct alternative fact patterns to establish that the alleged vehicular collision is not a covered event pursuant to No-Fault Law.
 STAGED INTENTIONAL ACCIDENTIt is well established precedential case law, a staged or intentional vehicular collision is not a covered accident under New York State Insurance Law, thus a bar to vehicular insurance coverage (Adirondack Ins. Exch. v Rodriguez, 215 AD3d 904, 905-906 [2d Dept 2023], citing National Gen. Ins. Online, Inc. v Blasco, 210 AD3d 786 [2d Dept 2022]). In a most extreme example of an intentional albeit not per se staged vehicular collision which resulted in the operator being convicted of depraved indifference murder, the Appellate Division Second Department held:
"Under the automobile insurance policy issued to Eugene Wright, Allstate agreed to provide coverage for 'accidents arising out of the ownership, maintenance or use . . . of an insured auto'. Hazel Wright's actions of turning her vehicle around, accelerating, and striking the decedent with enough force to crush his skull, cannot be deemed 'an accident' within the meaning of the policy. Thus, the incident which led to the death of Robert Bostick did not fall within the scope of coverage provided by Eugene Wright's automobile insurance policy" (Allstate Ins. Co. v Bostic, 228 AD2d 628, 628-629 [2d Dept 1996], citing People v Wright, 198 AD2d 249 [2d Dept 1993] and John Hancock Prop. & Cas. Ins. Co. v Warmuth, 205 AD2d 587 [2d Dept 1994]). An accident is defined as an unforeseen unplanned happenstance lacking in intentionality [FN1]
. Staged by its very definition is deliberately arranged for a desired outcome thus steeped in intentionality.[FN2]
Notwithstanding that the homicide victim was an innocent third-party, the court held that the operator committed an intentional vehicular collision which was not an "accident" and thus not an insurable event and denied coverage to the third-party innocent in a wrongful death action. Indeed, it has been consistently upheld, innocent third parties injured by staged intentional vehicular collisions shall not be afforded insurance coverage (Adirondack Ins. Exch. v Rodriguez at 905-906, citing (Nationwide Gen. Ins. Co. v Pontoon, 123 AD3d 1040 [2d Dept 2014]).[FN3]
The Insurer bears the initial burden to establish that the vehicular collision at issue is a staged intentional vehicular collision as a matter of law by the lower standard of proof, preponderance of evidence, as opposed to the higher standard of proof, clear and convincing evidence (Repwest Ins. Co. v Sasan Family Chiropractic, P.C., 2016 NY Slip Op 31413 [U] *9-11 [Sup Ct, NY County 2016], citing V.S. Med. Servs., P.C. v Allstate Ins. Co., 25 Misc 3d 39 [App Term 2009]). It is a matter of the admissible evidence proffered by the Insurer to so meet [*2]that standard of proof. Alone, alleged vehicular staged accident conspirators'[FN4]
affidavits are insufficient to meet this burden:
"Although by itself, Baptiste's affidavit would not be sufficient, when his affidavit is considered together with the transcript of his recorded conversation detailing his role in underlying scheme as the driver of the U-Haul vehicle, as well as the affidavit of investigator Moran who personally interviewed Baptiste, recorded the conversation and certifies as to the truth of the transcription, plaintiff has made a sufficient prima facie showing that the collision was intentional and staged, and as such, is not a covered accident under plaintiff's policy" (Repwest Ins. Co. v Sasan Family Chiropractic, P.C. at 7, citing Matter of Liberty Mut. Ins. Co. v Young, 124 AD3d 663 [2d Dept 2015], Emanvilova v Pallotta, 49 AD3d 413 [1st Dept 2008]; Matter of Travelers Indem. Co. v Cruz, 40 AD3d 362 [1st Dept 2007]; Matter of Liberty Mut. Ins. Co. v Goddard, 29 AD3d 698 [2d Dept 2006]; Matter of Eagle Ins. Co. v Gueye, 26 AD3d 192 [1st Dept 2006]; State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d 490 [2d Dept 2003]).The court found that it was not the conspirator's affidavit in and of itself that was sufficiently persuasive to meet the prima facie burden. Rather, the insurer investigator's affidavit in which he swore under penalties of perjury that the alleged conspirator "told him that he intentionally struck the cab" was deemed "an admission and as such, properly considered as competent evidence in support of plaintiff's prima facie case for the purpose of showing that the [*3]collision was staged" (id. at 5-6, Tower Ins. Co. of NY v Hossain, 134 AD3d 644 [1st Dept 2015]; Tower Ins. Co. of NY v Brown, 130 AD3d 545 [1st Dept 2015]; Castlepoint Ins. Co. v Jaipersaud, 127 AD3d 401 [1st Dept 2015]). The court noted that the investigator had personal knowledge as he directly spoke with the alleged conspirator, recorded the conversation, reduced the conversation to a written transcript which the investigator certified as to its accuracy and veracity of the conspirator's verbal admission against his own interest of criminal conduct. Therefore, insurer's admissible proffered proof by a preponderance of the evidence established that the vehicular collision was intentional and staged and thus insurer met its initial prima facie burden for summary judgment. The burden then shifted to provider seeking insurance coverage to rebut insurer's prima facie case, which the court found it failed to so do (id.). Rejected by court were the following: provider attorney's affirmation without corroborating affidavit by affiant with personal knowledge; provider's conclusory attack on the admissibility and veracity of the affidavits and the police accident report; and provider's argument for time for discovery where "it has failed to show that facts essential to oppose the motion are in plaintiff's exclusive knowledge, or that discovery may lead to facts relevant to a viable defense" in mere hope that further discovery may lead to any evidence which would support provider's rebuttal of insurer's prima facie case (id. at 11, see Adirondack Ins. Exch. v Rodriguez, 215 AD3d 904, 905-906 [2d Dept 2023], citing Santiago v City of NY, 191 AD3d 715 [2d Dept 2021]; Blake v City of NY, 148 AD3d 1101 [2d Dept 2017]).
Here, in this instant matter, Defendant fails to meet its burden to establish prima facie entitlement for summary judgment as a matter of law. Defendant's admissible proffered proof failed to establish that the vehicular collision was intentional and staged thereby failing to meet its prima facie burden for summary judgment. Defendant's overreliance on driver's testimony at EUO ("Examination Under Oath") is misplaced. Its EUO interrogation of the driver was leading and would quite likely be subject to sustained objections by opposing counsel at trial. Most notably, "do you believe that you were set up?" (tr at 29, lines 3-4). Indeed, this line of interrogation is quite a leap from driver's preceding testimony. In sum and substance, driver picked up two passengers for a paid trip through a software hail to a specific destination. During the trip, one of the two passengers asked to stop at a store, returned to the vehicle and made allegedly suspect phone calls. A block or two thereafter an inconsequential collision or sideswipe with negligible damage to his vehicle occurred with an unidentified vehicle which did not stop, as testified by the driver. Oftentimes, drivers and passengers are co-conspirators. Here, this driver is the accuser of the two passengers as being co-conspirators with the driver of the colliding unidentified vehicle. Driver testified that although the collision was inconsequential, nevertheless both passengers insisted on calling 911 after he overhears passengers' phone call with mentions of back pain. Police arrived and both passengers were taken away by ambulance. Driver's testimony, aided by a Creole interpreter, although credible and not mean-spirited, was aggrieved [FN5]
, speculative, contradictory, inconsistent and conclusory primarily focusing on his perceived suspicious actions of the passengers as opposed to the actual collision. The prima facie [*4]burden to viably satisfy a staged accident motion for summary judgment is indeed a high one (see Plaintiff New S. Ins. Co. v Laforoue, *3-4, 2025 LX 26019 [Sup Ct, Suffolk County Jan. 6, 2025, No. 603485-2022; see also State Farm Mut. Auto. Ins. Co. v Maitre, *8-9, 2024 LX 73966 [Sup Ct, Suffolk County June 28, 2024, No. 602865-2022]). One-sided testimony is woefully deficient, particularly where the conspiratorial allegations against the passengers are not merely civil in nature but also exposes the passengers to criminal prosecution.[FN6]
Even smoking gun affidavits of confessions in staged accidents may not necessarily be sufficient to satisfy the high staged accident prima facie burden (see NYRX Pharm. Inc. v Mid-Century Ins. Co., 80 Misc 3d 1225[A], 2023 NY Slip Op 51094[U] [Civ Ct, Kings County 2023] [Insurer's one-sided notarized fill-in affidavits of confession in staged accident by Spanish/English speakers insufficient as a basis for summary judgment]). Where there is but a scintilla of a material issue of fact defeats a motion for summary judgment, obviating the shifting of the burden to non-movant for rebuttal. This is the case, herein. Defendant fails to have met its burden for judgment as a matter of law premised upon staged accident.

TRANSPORTATION NETWORK COMPANY EXCLUSION
As court Decides supra, that Defendant failed to establish no coverage premised upon staged accident, it argues in the alternative, that no coverage is premised upon the policy exclusion for TNC ("Transportation Network Company") vehicles. Of which, Defendant also fails to establish judgment as a matter of law in its favor.
Indeed, the policy at issue contains coverage exclusion for TNC vehicular accidents:
"10. For that insured's liability arising out of the ownership or operation of a motor vehicle while the motor vehicle is being used by a transportation network company driver who is logged onto the transportation network company's digital network but is not engaged in a transportation network prearranged trip or while the driver provides a transportation network company prearranged trip" (NY St Cts Elec Filing [NYSCEF] Doc No. 23, Nohr Affidavit, Exhibit O).
Nevertheless, Defendant errs in its failure to consider its policy's integral definition of TNC vehicles, which is identical to the New York State statutory definition (NY CLS Veh & Tr § 1691). Colloquially at first blush, the plain reading of the definition would appear to be all encompassing of any and all vehicular passenger rides for a fee emanating from software or digital app. However, the exclusions that follow significantly narrow the initial expansive plain meaning of the definition (NY CLS Veh & Tr § 1691 1[c]). Further, there is supplementary statutory narrowing of those very exclusions (NY CLS Veh & Tr § 16911[c] [i], [iii], [iv]; NYC Administrative Code 19-502; NY CLS Veh & Tr § 16911[c] [ii]; NY CLS Veh & Tr § 121-e)[FN7]
.
The insured driver/owner of the vehicle testified at EUO: he has a Class E New York [*5]Driver's License [FN8]
; he pays Mex a Brooklyn car service $120.00 in cash weekly solely at his discretion in which he bids on available rides on his phone via Limosys app. The New York State Transportation Network Company Act is relatively new, becoming effective as of June 29, 2017, currently licensing solely Uber and Lyft.[FN9]
"A TNC is a business, also known as a 'rideshare company', licensed by DMV to use a digital network (smartphone app) to connect passengers to TNC drivers for prearranged trips."[FN10]
Although Limosys used by Mex car service to send rides to driver/owner for the trip herein is a transportation hailing software it is not recognized as a TNC rideshare company pursuant to the statutory definition. Additionally, the driver/owner had a Class E Driver's License, which is required to operate livery, taxi or limousine, whereas it is not so required for TNC drivers.[FN11]
The City of New York as other cities with populations of one million or more are exempted from the State's TNC Law.[FN12]
Thus, although Uber and Lyft are licensed New York State TNCs, they are not TNCs while operating within the City of New York and must comply with the NYC Taxi and Limousine Commission (TLC) Rules and Regulations (NYC Charter 2303 [a]).
Although precedential case law is scant: "TLC granted an Uber-affiliated entity a license to operate a black car base station in the City" (Singh v City of NY, 40 NY3d 138, 143 [2023]; NY CLS Veh & Tr § 16911[c][iii]). "The Second Department has held that Lyft cars operating in NYC are considered for-hire vehicles rather than TNC vehicles [and] 'black cars' are considered for-hire vehicles under the Administrative Code, § 19-502(u)" (Old Republic Ins. Co. v Stile, 2025 NY Slip Op 34715[U] [Sup Ct, NY County 2025], citing Matter of Progressive Ins. Co. v Service, 241 AD3d 690 [2d Dept 2025]; Matter of Progressive Ins. Co. v Callahan, 232 AD3d 903 [2d Dept 2024]); Matter of Progressive Ins. Co. v Baby, 232 AD3d 902 [2d Dept 2024]). It is consistently conclusive that there is no TNC that can lawfully operate within the City of New York, even if an Uber or Lyft State TNC. Thus, in this instant matter, the driver/owner's vehicle which was apparently duly licensed and registered was not, nor could it have been operating as a TNC when the vehicular collision occurred in the Borough of Brooklyn, City of New York on February 10, 2021. Defendant further errs in its argument that [*6]its policy excludes coverage for use of the insured vehicle as a livery. Rather, its argument was based upon TNC exclusion with a mere mention of livery, which was inconsistent with the definition of TNC. The policy excludes coverage for use as TNC vehicle, whereas not excluding coverage for use as a livery vehicle, a black car vehicle or a for-hire vehicle (NY St Cts Elec Filing [NYSCEF] Doc No. 23, Nohr Affidavit, Exhibit O at 15—17). Each of the denials for the bills at issue although found timely, the basis for the denials is improper based upon This Court's deliberation. 
For all the foregoing reasons, Defendant's motion for summary judgment is hereby in its entirety DENIED.
This shall constitute the Decision and Order of This Court.The undersigned attorneys certify that upon due diligence none of their firm's papers as pertains to case law associated with this case or this motion, and upon information and belief, none of the associated papers that were drafted post January 1, 2022 used generative artificial intelligence programs.
DATE February 25, 2026HON. SANDRA E. ROPER

Footnotes

Footnote 1:Merriam-Webster, https://www.merriam-webster.com/dictionary/accident (accessed Oct. 5, 2023); Vocabulary.com, 
https://www.vocabulary.com/dictionary/accident (accessed Oct. 5, 2023). 

Footnote 2:Vocabulary.com, 
https://www.vocabulary.com/dictionary/staged (accessed Oct. 5, 2023).

Footnote 3:"[I]f GEICO can prove that the collision was staged by Robinson, its insured, it would not be obligated to provide coverage under the policy regardless of whether Pontoon was an innocent third party (Nationwide Gen. Ins. Co. v Pontoon at 1041, citing Matter of Travelers Indem. Co. v Richards-Campbell, 73 AD3d 1076 [2d Dept 2010]; Govt. Emples. Ins. Co. v Shaulskaya, 302 AD2d 522 [2d Dept 2003]; Morris v Allstate Ins. Co., 261 AD2d 457 [2d Dept 1999]; Matter of Liberty Mut. Ins. Co. v Goddard, 29 AD3d 698 [2d Dept 2006]; State Farm Mut. Auto. Ins. Co. v Laguerre, 305 AD2d 490 [2d Dept 2003]).

Footnote 4:Although these matters are civil as to insurance coverage in perpetration of staged vehicular collisions, it is a New York criminal Class D and E felony pursuant to Alice's Law effective 11/1/2019: Sections NY CLS Penal § 176.75 and NY CLS Penal § 176.80:
• § 176.75 Staging a motor vehicle accident in the second degree. 

• A person is guilty of staging a motor vehicle accident in the second degree when, with intent to commit and in furtherance of a fraudulent insurance act, he or she operates a motor vehicle and intentionally causes a collision involving a motor vehicle.
• Staging a motor vehicle accident in the second degree is a class E felony.
• § 176.80 Staging a motor vehicle accident in the first degree. 

• A person is guilty of staging a motor vehicle accident in the first degree when he or she commits the offense of staging a motor vehicle accident in the second degree and thereby causes serious physical injury or death to another person, other than a participant in such offense.
• Staging a motor vehicle accident in the first degree is a class D felony.

(2019 NY ALS 151, 2019 NY Laws 151, 2019 NY Ch. 151, 2019 NY AB 3985). Further, there is also Federal criminal exposure to alleged conspirators: "'As alleged, these defendants played bumper cars with the lives of unsuspecting New Yorkers, all to enrich themselves through insurance fraud. Insurance fraud through staged accidents presents a danger not only to the public health but also exacts a high cost to the public in the cost of insurance,' stated United States Attorney Lynch. 'We and our law enforcement partners will vigorously pursue and prosecute those who seek to profit by such fraud'" (Eight Indicted In Two Million Dollar Staged Accident Conspiracy, United States Attorney's Office Eastern District Press Release, available at 
https://www.justice.gov/usao-edny/pr/eight-indicted-two-million-dollar-staged-accident-conspiracy [May 8, 2013]).

Footnote 5:This accident is driver's first during the only year that he drove as a taxi and he stopped as a result of this accident, as he testified referring to the alleged injured passengers: "The two people who put me in this predicament" (NY St Cts Elec Filing [NYSCEF] Doc No. 28, Nohr Affidavit, Exhibit T, tr at 18, line 18).

Footnote 6:See n 4, supra.

Footnote 7:"Every motor vehicle, other than a taxicab or a bus, used in the business of transporting passengers for compensation. However, it shall not include vehicles which are rented or leased without a driver" (NY CLS Veh & Tr § 121-e).

Footnote 8:"(v) Class E. Such license shall be valid to operate only vehicles which may be operated with a class D license, except that in addition it shall be valid to operate any such motor vehicle, other than a vehicle defined as a bus in subdivision one of section five hundred nine-a of this chapter, used to transport up to fourteen passengers for hire and other than an altered motor vehicle commonly referred to as a "stretch limousine" having a seating capacity of nine or more passengers including the driver (NY CLS Veh & Tr § 501 2 [a] [v]).

Footnote 9:Department of Motor Vehicles, Information for Transportation Network Company (TNC) Passengers, 
https://dmv.ny.gov/business/information-for-tnc-passengers#:~:text=A%20Transportation%20Network%20Company%20(TNC,Opting%20Out.

Footnote 10:See n 9, supra.

Footnote 11:See n 9, supra.

Footnote 12:See n 9, supra; NY CLS Veh & Tr § 1692 (10); NY CLS Veh & Tr § 1693 (12).